**Steven M. McDADE, Defendant Below, Appellant,**

v.

**STATE of Delaware, Plaintiff Below, Appellee.**

No. 299, 1996.

Supreme Court of Delaware.

Submitted: May 6, 1997.
Decided: May 23, 1997.

Bernard J. O'Donnell, Office of the Public Defender, Wilmington, for appellant.

John Williams, Department of Justice, Dover, for appellee.

Before VEASEY, C.J., and WALSH and HOLLAND, JJ.

HOLLAND, Justice:

The defendant-appellant, Steven M. McDade "(McDade"), was arrested and charged with thirty-one Protection from Abuse ("PFA") Order violations. He was later indicted for these thirty-one offenses, along with one count of Offensive Touching, one count of Stalking and multiple counts of Harassment and Aggravated Harassment. Following a jury trial in the Superior Court, McDade was convicted and sentenced on various counts in the indictment.[1]

In this direct appeal, McDade only challenges his conviction on the one count of Stalking.[2] First, McDade argues that his conviction for Stalking was based upon an inadequate jury instruction. Second, McDade argues that Delaware's stalking statute violates the United States Constitution because it provides a content-based preference for one means of expressive be-

---

**1.** McDade was sentenced to three years imprisonment at Level V on the Stalking offense and thirty days imprisonment at Level V for each of eighteen PFA violations. With respect to the remaining five PFA violations, for which he was convicted, and the Offensive Touching conviction, McDade received two years and seven months imprisonment at Level V suspended for six months at Level IV, two years at Level III with the balance of the term at Level II probation. McDade's cumulative sentence amounted to four years, six months at Level V, six months at Level IV, and thirty months at Level III and Level II probation.

**2.** McDade was indicted pursuant to 11 *Del. C.* § 1312A(a) which at the time provided: "Any person who wilfully, maliciously and repeatedly follows or harasses another person or who repeatedly makes a credible threat with the intent to place that person in reasonable fear of death or serious physical injury is guilty of the crime of stalking." 11 *Del.C.* § 1312A(a) (1995). That section was amended in 1996 and currently provides:

> Any person who intentionally engages in a course of conduct directed at a specific person which would cause a reasonable person to fear physical injury to him or herself, to a friend or associate, or to a member of his or her household or to a third person and whose conduct induces such fear in such person, is guilty of the crime of stalking.

11 *Del.C.* § 1312A(a) (Supp.1996).

havior—labor picketing. This Court has concluded that neither of McDade's contentions is meritorious.

### Facts

McDade and his wife, Carolyn McDade, were married on July 1, 1987. They are the parents of two young children. The couple separated in April or May of 1995. On July 18, 1995, Mrs. McDade sought a PFA Order in the Family Court against McDade. McDade consented to the entry of the PFA Order and vacated the family residence.

The PFA Order, effective for one year, required, *inter alia*, that McDade "stay 100 yards away from [Mrs. McDade's] person, residence, and workplace except for visitation and for the limited purpose of dropping off ... the child support required herein." In addition, the PFA Order provided that McDade "shall not contact nor attempt to contact [Mrs. McDade] in any way, including, but not limited to, by phone, by the mail or by any other means, except for visitation purpose." It also provided for "liberal visitation as the parties mutually agreed upon."

Following the entry of the PFA Order, Mrs. McDade kept a log of McDade's contacts with her. Mrs. McDade testified at trial regarding the incidents recorded in her log. The alleged PFA violations were mostly verbal and of an abusive or harassing nature. According to her testimony, the factual basis for the Stalking offense was also abusive and threatening contacts.

### No Plain Error

### Stalking Instruction

■ The record reflects that the Superior Court read the indictment to the jury. The indictment charged McDade with Stalking because he wilfully, maliciously and repeatedly followed or harassed his wife; *or* repeatedly made a credible threat with the intent to place his wife in reasonable fear of death or serious physical injury. 11 *Del.C.* § 1312A(a) (1995). The Superior Court's instructions, however, only elaborated on the first alternative basis of the Stalking offense.

In this appeal, McDade argues: "The trial court's mistaken omission to define or even address in jury instructions one of two alternative means of proving the Stalking offense as alleged in the indictment deprived the jury of adequate guidance concerning the elements of the offense and the Defendant of an adequately guided and informed jury verdict." McDade's trial attorney did not take any exceptions to the jury charge. McDade's failure to object to the jury instruction on the Stalking allegations constitutes a waiver. Consequently, any objection may be reviewed on appeal only for plain error. Supr.Ct. R. 8; Super.Ct.Crim. R. 30; *Chance v. State*, Del.Supr., 685 A.2d 351, 354 (1996); *Wainwright v. State*, Del.Supr., 504 A.2d 1096, 1100 (1986).

■ Superior Court Criminal Rule 7(c)(1) allows the inclusion of multiple means in one count. That rule reads in pertinent part, "[the indictment may allege] in a single count that the means by which the defendant committed the offense are unknown or that the defendant committed it by one or more specified means." Super.Ct.Crim. R. 7(c)(1). This Court addressed the meaning and the purpose of this provision most recently in *Richardson v. State*, Del.Supr., 673 A.2d 144 (1996).

Although the indictment alleged both of the possible statutory means for committing the Stalking offense, the record reflects that the State presented no evidence at trial that McDade had made a credible threat with the intent to place his wife in reasonable fear of death or serious physical injury. 11 *Del.C.* § 1312A(a) (1995). In its closing statement to the jury, the prosecutor only argued the first alternative as the basis for McDade's conviction: "The State contends that through the evidence that was presented to you, the State has proven beyond a reasonable doubt that this defendant continually, repeatedly, willfully, and maliciously harassed [Mrs.] McDade."

In the context of McDade's trial on the charge of Stalking, the additional language in the indictment that was read to the jury was unnecessary but not prejudicial. *See Richardson v. State*, Del.Supr., 673 A.2d 144 (1996). The evidence presented and the prosecution's contentions in its closing argu-

ment demonstrate that there was no legal or factual basis to specifically instruct the jury on the second alternative means for convicting McDade of Stalking. *See id.* McDade has failed to prove plain error. *Chance v. State,* 685 A.2d at 354; *Wainwright v. State,* 504 A.2d at 1100.

### Stalking Statute

### United States Constitution

 In his second argument, McDade alleges that "[t]he content based preference for labor picketing contained in Delaware's stalking statute renders the statute unconstitutional on its face as violative of the First Amendment and the Fourteenth Amendment due process and equal protection in the United States Constitution."[3] The pre–1996 stalking statute provided: "In the event a person charged under this section is engaged in lawful labor picketing, there shall be a rebuttable presumption that such person does not have the intent required under subsection (a) of this section." 11 *Del.C.* § 1312A(c) (1995).[4] McDade acknowledges that in 1996, this Court upheld the constitutionality of the Delaware stalking statute when it was challenged on the grounds of vagueness and interference with the right to travel. *Snowden v. State,* Del.Supr., 677 A.2d 33, 37–38 (1996).

McDade, however, challenges the constitutionality of the Delaware stalking law, 11 *Del.C.* § 1312A (1995), on the basis that the exemption for "lawful labor picketing" in the pre–1996 statute is an impermissible protection of one form of First Amendment speech or expression to the detriment of other First Amendment activities not involving "lawful labor picketing." According to McDade, the statutory exemption for lawful picketing contained in 11 *Del.C.* § 1312A(c) (1995), renders the entire Delaware stalking law unconstitutional on its face. McDade does not assert that he is within the protected class of persons engaging in "lawful labor picketing."

 McDade's constitutional argument is that because lawful labor picketers are exercising one form of First Amendment freedom of expression, a criminal statute that might otherwise be applicable to them is unconstitutional on its face if it exempts their behavior based on the content of their "speech." A Delaware criminal statute cannot, however, impose liability upon what is otherwise constitutionally protected First Amendment freedom of expression. *Texas v. Johnson,* 491 U.S. 397, 109 S.Ct. 2533, 105 L.Ed.2d 342 (1989). Accordingly, one who engages in "lawful labor picketing" or any other form of a constitutionally protected exercise of the right of freedom of speech or expression cannot be convicted under Delaware's stalking statute, even without any specific exception. *See id.*

 A legislative enactment is presumed to be constitutional. *See State v. Blount,* Del.Super., 472 A.2d 1340, 1346 (1984), *aff'd,* Del.Supr, 511 A.2d 1030 (1986). McDade has the burden of rebutting this presumption of validity and constitutionality which accompanies every statute. *Wilmington Med. Ctr., Inc. v. Bradford,* Del.Supr., 382 A.2d 1338, 1342 (1978); *Justice v. Gatchell,* Del.Supr., 325 A.2d 97, 102 (1974). All reasonable doubts as to the validity of a law must be resolved in favor of the constitutionality of the legislation. *Atlantis I Condominium Ass'n v. Bryson,* Del.Supr., 403 A.2d 711, 714 (1979). McDade has not demonstrated that the Delaware stalking statute is unconstitutional on its face.

### Conclusion

The judgment of the Superior Court, that was entered with regard to McDade's conviction for Stalking, is affirmed.

---

**3.** McDade argues: "Had there not been a content based preference for labor expression imposed in Delaware's stalking statute, it could survive constitutional review. Burdened with it, it cannot. By devising a statutory preference for the expressive activity of labor union picketing over other means and sources of expression, the State has consigned its stalking statute to unen-

forceability under the First and Fourteenth Amendments."

**4.** The stalking statute was amended in 1996 and currently provides: "In any prosecution under this section, it is an affirmative defense that the person charged was engaged in lawful picketing." 11 *Del.C.* § 1312A(c) (Supp.1996).