**William P. INGRAM and Margaret Anne Ingram, Defendants Below, Appellants,**

v.

**Betty F. THORPE, Plaintiff Below, Appellee.**

**No. 545, 1998.**

Supreme Court of Delaware.

Submitted: Dec. 7, 1999.
Decided: March 7, 2000.

593 A.2d 589 (Del.Supr.)

Patrick Scanlon, Bradley S. Eaby, Barros, McNamara, Scanlon, Malkiewicz & Taylor, P.A., Dover, Delaware, for appellants.

Noel E. Primos, Schmittinger and Rodriguez, P.A., Dover, Delaware, for appellee.

Before WALSH, HOLLAND and BERGER, Justices.

BERGER, Justice:

This appeal involves an attempt by the purchaser of real property to rescind a contract of sale, and recover the deposit, two years after signing the contract and taking possession of the property. The buyer relies on a statute that makes land contracts voidable if the seller provides financing and fails to give the buyer an amortization schedule. The Superior Court held that such a contract is voidable until "settlement" and that settlement in this case will take place in 2025, when the buyer makes the final payment to the seller. We reverse. The contract of sale defines settlement and that definition controls. Moreover, the result here is consistent with a sensible interpretation of the statute, which was not intended to make seller-financed transactions voidable for the entire term of the financing.

I. Factual and Procedural Background

On December 22, 1994, Marvin E. Thorpe and Betty F. Thorpe entered into

an agreement to buy a house in Dover, Delaware, from William P. Ingram and Margaret Anne Ingram. The purchase price was $209,000 and, as a down payment, the Thorpes paid $20,000 in cash and conveyed a 1.3 acre parcel of land to the Ingrams. The balance of $154,000 was payable over 30 years at 9% interest. The Thorpes took possession in March 1995 and began making monthly payments to the Ingrams. In the fall of 1995 the Thorpes separated, vacated the house, and began renting the house to tenants. The Thorpes failed to make their monthly payments in November and December 1995, but Betty Thorpe alleges that she cured the default in February 1996.

One year later, Thorpe filed suit against the Ingrams alleging that the Ingrams breached the agreement of sale by, among other things, (i) refusing to recognize Thorpe's cure of the default, and (ii) excluding Thorpe from the property after the default. The complaint also alleges that the Ingrams failed to explain the nature of the loan and failed to provide an amortization schedule, as required by 25 *Del.C.* § 314. The prayer for relief seeks the return of Thorpe's down payment and all other amounts paid to the Ingrams. Thorpe moved for summary judgment on her statutory claim and the Superior Court granted her motion, holding that the agreement of sale will remain voidable until Thorpe makes the last installment payment and the Ingrams transfer the deed.

## II. Discussion

 We review summary judgment decisions de novo.[1] The Superior Court held that the term "settlement," as used in 25 *Del.C.* § 314(c), means the time at which the final steps of the transaction are completed. The statute provides:

(a) Every contract for the sale of improved or unimproved real estate under which the seller(s) agree to provide any financing for the purchaser(s) shall include as an integral part of the contract a complete amortization schedule for all payments to be made under such financing agreement. Such amortization schedule shall:

(1) Include a per payment breakdown of principal and interest and a per payment computation of the unpaid principal balance remaining;

(2) Include a statement that the seller(s) and purchaser(s) have read and understand the amortization schedule; and

(3) Be signed by the seller(s) and purchaser(s).

(b) Every contract for the sale of improved or unimproved real estate under which the seller(s) agree to provide any financing for the purchaser(s) shall clearly state the principal amount of seller financing, exclusive of interest, which comprises the purchase price thereunder, and the amount of any interest to accrue under said seller financing shall not be included in the purchase price stated thereunder.

(c) Failure to comply with the requirements of either subsection (a) or (b) of this section shall make the contract voidable at the option of either party to the contract prior to settlement.

In construing a statute, courts attempt to ascertain and give effect to the intent of the legislature.[2] Where the language of the statute is unambiguous, no interpretation is required and the plain meaning of the words controls.[3] If there is uncertainty, however, the statute must be construed as a whole in a manner that avoids absurd results.[4]

---

1. *Williams v. Geier,* Del.Supr., 671 A.2d 1368 (1996).

2. *State v. Cephas,* Del.Supr., 637 A.2d 20 (1994).

3. *Spielberg v. State,* Del.Supr., 558 A.2d 291 (1989).

4. *Id.* at 293.

The statute at issue is simple and direct. It requires full disclosure of the financing arrangements in any sale of real property where the seller is providing the financing. If the required information is not disclosed in the contract of sale, the statute gives the parties an "out"—they may avoid the contract at any time before settlement. The only problem is that the statute does not define "settlement." The Superior Court relied on a dictionary definition that equates "settlement" with "closing" and defines "closing" as the "final steps of the transaction whereat the consideration is paid, mortgage is secured, deed is delivered or placed in escrow, etc." [5]

■ Dictionary definitions of undefined terms can be useful in construing statutes, and we have no quarrel with the general definition chosen by the trial court. We differ with the trial court over the application of that general definition to the facts of this case. The agreement of sale defines both "settlement" and "closing." In a paragraph about taxes, the agreement provides, "[a]ll proration of taxes and assessments shall be as of the date of settlement, which shall be the date of execution and recording of this Conditional Sales Agreement." Another paragraph defines "closing" and "final closing": "Closing ... shall refer to the date on which the Conditional Sales Agreement is executed and delivered for recording and upon which possession is granted to Buyer and upon which interest or payments under the Conditional Sales Agreement shall commence. The term final closing refers to the execution and delivery of a deed for recording." The Superior Court decided that "settlement," for purposes of § 314, would occur at "final closing."

■ The contract definitions of "settlement" and "closing" are similar and both relate to the time when the transaction was finalized and equitable ownership of the property passed to the buyers.[6] The parties' definitions are consistent with the general dictionary definition of "settlement," and using their definitions to determine when settlement occurred for purposes of § 314 does no violence to the statute. The Superior Court's choice of "final closing" as the settlement date, by contrast, yields an absurd result. The statute requires that certain disclosures be included in the contract of sale, and if they are not included, the contract is voidable until settlement. If settlement is construed to mean "final closing," this contract will remain voidable for 30 years. Surely the General Assembly did not intend to leave the parties to a land transaction in a state of uncertainty for such an extended period. The purpose of the legislation was to give buyers full information about their financing, not to create a 30–year loophole for the parties to avoid their contractual obligations.

### III. Conclusion

Based on the foregoing, we conclude that the agreement of sale is not voidable pursuant to § 314 because Thorpe did not attempt to rescind it before settlement.[7] Accordingly, the decision of the Superior Court granting summary judgment to Thorpe is REVERSED and this matter is REMANDED for further action on Thorpe's remaining claims.

5. Black's Law Dictionary at 254 (6th Ed.1990).

6. *Briz-Ler Corporation v. Weiner,* Del.Supr., 171 A.2d 65 (1961).

7. It does not matter whether settlement occurred at the time of execution, possession, first payment or offering for recording, as all of those steps had been taken before Thorpe attempted to rescind the agreement.